**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case Nos.

9:18-cv-81394  9:18-cv-81470
9:18-cv-81430  9:18-cv-81472
9:18-cv-81437  9:18-cv-81475
9:18-cv-81438  9:18-cv-81477
9:18-cv-81441  9:18-cv-81478
9:18-cv-81450  9:18-cv-81479
9:18-cv-81451  9:18-cv-81513
9:18-cv-81454  9:18-cv-81683

COY EVANS, et al.,

   Plaintiffs,

vs.

OCWEN LOAN SERVICING, LLC,

   Defendant.
_____/

## ORDER GRANTING THE DEFENDANT'S MOTION TO DISMISS

These consolidated cases were filed in October of 2018.  Each one of the consolidated cases brought one count under the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"), and each case alleged that the Defendant (a loan servicing company) violated the TCPA by making "robo-calls" to the consolidated Plaintiffs with an "autodialer" machine. *E.g.,* 18-CV-81394, DE 29.[1]  The definition of a prohibited "autodialer" under the TCPA is critical to the consolidated Plaintiffs' cases.  Pending guidance from the Federal Communications Commission ("FCC") on the definition of an autodialer, the parties agreed that a stay should issue. DE 40.  The Court stayed the consolidated cases. DE 41.

---

1 The parties agreed that each of the consolidated cases would be bound by the Court's decision in case 18-CV-81394 and, to that end, the consolidated Plaintiffs filed a consolidated pleading in case 18-CV-81394. DE 54-57, 66.

The FCC did not immediately issue guidance. Instead, the FCC awaited a decision from the Supreme Court to define the term autodialer. On April 1, 2021, the Supreme Court issued its opinion in *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163.

In *Facebook*, a plaintiff received repetitive text messages from the social media platform Facebook. *Id.* at 1168. The text messages informed the plaintiff that someone had attempted to login to his Facebook account. *Id.* The plaintiff could not stop the text messages because he had no Facebook account—there was no method for him to change the text notification settings for an account that he did not possess. *Id.* The plaintiff sued Facebook, alleging that the text messages violated the TCPA. *Id.*

Critical to the plaintiff's ability to state a claim in his suit against Facebook was whether Facebook had used an autodialer as defined by the TCPA. The Supreme Court summarized the issue to be decided as follows:

> The Telephone Consumer Protection Act of 1991 (TCPA) proscribes abusive telemarketing practices by, among other things, imposing restrictions on making calls with an "automatic telephone dialing system." As defined by the TCPA, an "automatic telephone dialing system" is a piece of equipment with the capacity both "to store or produce telephone numbers to be called, using a random or sequential number generator," and to dial those numbers. 47 U.S.C. § 227(a)(1). The question before the Court is whether that definition encompasses equipment that can "store" and dial telephone numbers, even if the device does not "us[e] a random or sequential number generator." It does not. To qualify as an "automatic telephone dialing system," a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.

*Id.* at 1167. The Supreme Court defined the narrow class of machine that qualifies as an autodialer under the TCPA—only a machine that utilizes a random or sequential[2] number generator and

---

[2] A sequential phone number generator dials numbers by continuously adding "one" to the previous phone number dialed.

2

places a call using the same can qualify as an autodialer. *Id.* at 1170-72. This definition differs from the broad definition sought by the plaintiff which classified any machine with the *capacity* to generate random numbers as an autodialer. *Id.* at 1172-73. Under this broad definition, even a cell phone would qualify as an autodialer. *Id.* at 1171. Distilled down, the plaintiff requested a definition of autodialer that would include any device that possessed the capability to dial a phone number without human intervention. *Id.* at 1172. The Court expressly rejected the plaintiff's position:

> Duguid last warns that accepting Facebook's interpretation will "unleash" a "torrent of robocalls." As Duguid sees it, the thrust of congressional action since the TCPA's enactment has been to restrict nuisance calls. Because technology "adapt[s] to change," Duguid argues, the TCPA must be treated as an "'agile tool.'". To this end, Duguid asks this Court to focus not on whether a device has the "senescent technology," of random or sequential number generation but instead on whether it has the "capacity to dial numbers without human intervention."
>
> To begin with, Duguid greatly overstates the effects of accepting Facebook's interpretation. . . . In any event, Duguid's quarrel is with Congress, which did not define an autodialer as malleably as he would have liked. "Senescent" as a number generator (and perhaps the TCPA itself) may be, that is no justification for eschewing the best reading of § 227(a)(1)(A). This Court must interpret what Congress wrote, which is that "using a random or sequential number generator" modifies both "store" and "produce."

*Id.* at 1172-73 (citations omitted).

Subsequent to the *Facebook* decision, the parties in the instant case agreed that the Court should lift its stay and rule on a motion to dismiss premised upon *Facebook*. DE 54. After the Court lifted its stay, the Plaintiffs filed an amended consolidated complaint[3] and the Defendant filed the Motion to Dismiss before the Court. DE 66, 67. In the amended consolidated complaint, the Plaintiffs do not allege that the Defendant's dialer machine *creates* numbers to be called using

---

3 The Plaintiffs' amended complaint adds an additional count under the Florida Consumer Collection Practices Act.

3

a random number generator. Instead, the Plaintiffs appear[4] to rest their TCPA claim on the allegation that the Defendant stores numbers to be called from a customer list and then, using that customer list, randomly selects a number to be called from the list at any given time:

> Plaintiffs know the calls were made using equipment which has the capacity to store numbers to be called and to dial such numbers automatically as specified by 47 U.S.C § 227(a)(1) (hereinafter "autodialer calls"). Plaintiffs will testify that they knew it was an autodialer because of the vast number of calls received over a prolonged time period.
>
> . . .
>
> Specifically, Defendant called Plaintiffs using the "Aspect" dialing system, which consists of functionally complimentary hardware and software components, including an integrated and interconnected database server that has the capacity to generate tables of 10-digit random and sequential numbers and then dial those numbers using outbound dialing software. Moreover, the "Aspect" dialing system uses its integrated random and sequential number generator functions to sort the telephone numbers that will be called during outbound call campaigns, and to determine the dialing sequence used during said calling campaigns. As such, the "Aspect" dialing system possessed at all material times the inherent and present capacity to operate as an ATDS as defined by the TCPA.

DE 66 at 4, 5.

The Plaintiffs argue that *Facebook* does not preclude their claims because *Facebook* left open the possibility that a machine with the *capacity* to generate random or sequential phone numbers still qualifies as an autodialer, even if it did not use the number generation as part of a specific phone call. DE 75 at 9 ("[A]ny language in the Facebook decision that appears to implicate the interpretation of "capacity" is certainly **unintentional**, and cannot be read as a pronouncement by the Supreme Court regarding the scope and application of that term in the context of applying the TCPA.") (emphasis added). The Court does not agree with the Plaintiffs' position for three reasons.

---

4 Any other construction of the Plaintiffs' TCPA claim would be implausible for the reasons discussed below.

First, the text of *Facebook* is clear: "In sum, Congress' definition of an autodialer requires **that in all cases**, whether storing or producing numbers to be called, the equipment in question **must use a random or sequential number generator**." 141 S. Ct. at 1170 (emphasis added). Second, the Supreme Court's wording quoted above was *in*tentional—not *un*intentional—because in crafting its definition of an autodialer, the Court rejected the idea that any device that makes phone calls without human intervention is an autodialer. *Id.* at 1172-73. Third and finally, district court cases confirm this Court's own understanding that, based upon the text of *Facebook*, it would be both futile and implausible for the Plaintiffs to state a claim for the reasons more fully explained below.

It is implausible[5] to suggest that the Plaintiffs were dialed using a random or sequential number generator, particularly when the Plaintiffs concede in their complaint that the Defendant, a loan servicer, called them to collect upon a debt. *Id.* at 6-7. If the Defendant placed phone calls at random or in sequence, the Plaintiffs would not have received multiple phone calls, let alone hundreds of phone calls. *E.g.,* DE 66 at 7 (Plaintiff Haylie Scioli alleging that she received 877 calls). In *Barry v. Ally Financial, Inc.*, No. 20-12378, 2021 WL 2936636, at * 4 (E.D. Mich. July 13, 2021), a case decided after *Facebook*, a plaintiff alleged that Ally called her using an autodialer in an attempt to collect on her brother's car loan. The district court dismissed the plaintiff's claims with prejudice, holding that "[b]ecause the calls Plaintiff complains about were directed to Plaintiff specifically and purposefully, [and] related to her brother's account with Defendant, the Court can only conclude that the technology that called her used a stored list containing the names and numbers of persons to be contacted." *Id.* at *3. Otherwise, "had the technology stored or produced

---

5 Allegations are implausible under *Twombly* and *Iqbal* when there is an "obvious alternative explanation" that does not show a plaintiff is entitled to relief. *E.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

5

Plaintiff's number at random or in sequence, [Ally] would have no way of knowing that it was contacting someone associated with a specific account holder." *Id.* It was implausible that Ally used an autodialer to call the plaintiff, just as here it is implausible that Defendant would dial numbers randomly or sequentially in hopes of reaching Plaintiffs, instead of simply dialing phone numbers already in its files. *See also McEwan v. Nat'l Rifle Ass'n of Am.*, No. 2:20-cv-00153, 2021 WL 1414273, at *7 (D. Me. Apr. 14, 2021) ("After [*Facebook*], the [autodialer] portion of the claim requires an allegation that [defendant] used a random or sequential number generator to place a call to plaintiff's cellphone, not merely claim that its dialing system has that capability."); *Mosley v. General Revenue Corp.*, No. 1:20-cv-01012-JES-JEH, 2020 WL 4060767, at *4 (N.D. Ill. July 20, 2020) (dismissing TCPA claim based on alleged use of an autodialer because it was implausible that a debt collection company would dial numbers randomly or sequentially: "Plaintiff offers no plausible explanation why a debt collection company would need or use a machine which had the capacity to dial or store randomly or sequentially generated numbers."); *Snow v. Gen. Elec. Co.*, No. 5:18-cv-0511, 2019 WL 2500407, at *4 (E.D.N.C. June 14, 2019) (holding that where a plaintiff is "a targeted recipient" of calls, "it is not reasonable to infer that the [calls] were sent with equipment 'using a random or sequential number generator'").[6] In conclusion, the Plaintiffs do not and cannot plausibly allege that their phone numbers were dialed at random—the only plausible inference is that they were dialed because of their status as serviced customers of the Defendant.

---

6 The Court notes that on pages 7 and 8 of its Motion, the Defendant cites to almost a dozen cases that have found that the phone system at issue in this case cannot produce telephone numbers using a random or sequential number generator.

For the foregoing reasons, it is **ORDERED AND ADJUDGED** that the Defendants' Motion to Dismiss [67] is **GRANTED** and the Plaintiff's TCPA claim, Count I, is **DISMISSED WITH PREJUDICE**. In the absence of any federal claim before this Court, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' remaining state law claim, Count II. *E.g., Brown v. Kopolow*, No. 10-80593-CIV, 2011 WL 283253, at *3-4 (S.D. Fla. Jan. 25, 2011) ("[A] district court is well within its discretion to dismiss state law claims once the basis for original federal court jurisdiction no longer exists.").[7] The Clerk of the Court shall **CLOSE THIS CASE**.

**DONE and ORDERED** in Chambers, West Palm Beach, Florida, this 21st day of October, 2021.

_____
ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

---

[7] The Plaintiffs do not invoke the diversity jurisdiction of this Court. DE 66 at 2-3.